**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Lifepoint Corporate Services, General Partnership,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Claritev Corp. f/k/a MultiPlan, Inc.; Aetna, Inc.; Blue Cross Blue Shield of Michigan Mutual Insurance Company; Aware Integrated, Inc.; BCBSM, Inc. d/b/a Blue Cross Blue Shield Of Minnesota; The Cigna Group; Elevance Health, Inc. f/k/a Anthem, Inc.; Kaiser Foundation Health Plan, Inc.; Allied National, LLC; Central States Southeast and Southwest Areas Health and Welfare Fund; CareFirst Of Maryland; Blue Cross Blue Shield of Massachusetts; Health Net of California, Inc.,<br><br>　　　　　Defendants. | Case No. 1:26-cv-06538<br><br>MDL No. 3121<br><br>__COMPLAINT__<br><br>**JURY TRIAL DEMANDED** |

**LIFEPOINT CORPORATE SERVICES, GENERAL PARTNERSHIP'S DIRECT
ACTION PLAINTIFF SHORT-FORM COMPLAINT**

The Plaintiff named below files this Short-Form Complaint and (if checked off below) Demand for Jury Trial against the Defendant(s) named below by and through the undersigned counsel. Plaintiff incorporates by reference the factual allegations, as well as the claims and relief checked off below, sought in the Consolidated Master Direct Action Plaintiff Complaint ("Consolidated Master DAP Complaint") as it relates to the named Defendant(s) (checked-off below), filed in *In re Multiplan Health Insurance Provider Litigation*, MDL No. 3121, in the United States District Court for the Northern District of Illinois. Plaintiff files this Short-Form

1

Complaint pursuant to Case Management Order No. 6, filed on the MDL Docket (No. 1:24-cv-06795) at ECF 179.

Plaintiff indicates by checking the relevant boxes below the Parties, Designated Forum, Jurisdiction and Venue, Causes of Actions and other Relevant Information specific to Plaintiff's case. Plaintiff, by and through the undersigned counsel, alleges as follows:

### I. IDENTIFICATION OF PARTIES

1. **PLAINTIFF**

2. Name of the Plaintiff alleging claims against Defendant(s): **Lifepoint Corporate Services, General Partnership ("Plaintiff")**

3. For each Plaintiff that is a corporation, list the state of incorporation and state of principal place of business. For each Plaintiff that is an LLC or partnership, list the state citizenship of each of its members. For each Plaintiff that is a natural person, list the state of residency and citizenship at the time of the filing of this Short-Form Complaint [Indicate State[s]]:

   **State of Citizenship: Delaware**

4. **DEFENDANT(S)**

5. Plaintiff names the following Defendant(s)[1] in this action [*Check all that apply*]:

| | |
|---|---|
| X | Claritev Corp. f/k/a MultiPlan, Inc. |
| X | Aetna, Inc., a subsidiary of CVS Health Corporation |
| | Blue Shield of California Life & Health Insurance Company |
| X | Blue Cross Blue Shield of Michigan Mutual Insurance Company |
| X | Aware Integrated, Inc. and BCBSM, Inc. d/b/a Blue Cross Blue Shield Of Minnesota |

---

[1] Each Defendant named in this Short-Form Complaint acted directly or through each of that entity's executives, employees, directors, and majority-owned subsidiaries. For example, UnitedHealth Group Inc. acted directly or through, among others, the following majority-owned subsidiaries: United Healthcare Insurance Company, and its affiliates; United Healthcare Services Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

| | |
|---|---|
| ☐ | Cambia Health Solutions, Inc. f/k/a The Regence Group |
| ☐ | Centene Corporation |
| X | The Cigna Group |
| X | Elevance Health, Inc. f/k/a Anthem, Inc. |
| ☐ | Health Care Service Corporation |
| ☐ | Highmark Health |
| ☐ | Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey |
| ☐ | Humana Inc. |
| X | Kaiser Foundation Health Plan, Inc. |
| ☐ | Molina Healthcare, Inc. |
| ☐ | UnitedHealth Group Inc. |
| X | Allied National, LLC |
| ☐ | Benefit Plans Administrators of Eau Claire, LLC |
| X | Central States Southeast and Southwest Areas Health and Welfare Fund |
| ☐ | Consociate, Inc. d/b/a Consociate Health |
| ☐ | Healthcare Highways Health Plan (ASO), LLC |
| ☐ | Secure Health Plans Of Georgia, LLC d/b/a Secure Health |
| ☐ | Sanford Health Plan |
| X | CareFirst Of Maryland |
| X | Blue Cross Blue Shield of Massachusetts |

6.  **OTHER DEFENDANTS**

7.  For each "Other Defendant" Plaintiff contends are additional parties and are liable or responsible for Plaintiff's damages alleged herein, Plaintiff must identify by name each Defendant and its citizenship, and Plaintiff must plead the specific facts supporting any claim against each "Other Defendant" in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

| | NAME | CITIZENSHIP |
|---|---|---|
| 1 | Health Net of California, Inc. | California |

## II.    DESIGNATED FORUM

8. For Direct Filed Cases: Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: **Northern District of Illinois**

9. For Transferred Cases: Identify the Federal District Court in which the Plaintiff originally filed and the date of filing: **Not Applicable**

## III.    JURISDICTION AND VENUE

10. Subject Matter Jurisdiction is based on:

☐        Diversity of Citizenship
☒        Federal Question
☐        Other (The basis of any additional grounds for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):
_____
_____

## IV.    FACTS AND INJURIES ASSERTED

11. Plaintiff adopts all paragraphs of the Consolidated Master DAP Complaint by reference, except for the allegations set forth in any cause of action that Plaintiff does not adopt (as indicated below). **Plaintiff adopts all allegations in the Consolidated Master DAP Complaint.**

12. Plaintiff adopts and alleges as injuries resulting from the challenged conduct the injuries to DAPs set forth in the Consolidated Master DAP Complaint.

## V.    ADDITIONAL FACTS DEMONSTRATING STANDING TO BRING CAUSES OF ACTION

13. Plaintiff alleges the following additional facts in support of its standing to bring causes of action:

**See attached additional pleadings.**

4

## VI.    CAUSES OF ACTION ASSERTED

14. Plaintiff adopts and asserts the following Causes of Action alleged in the Consolidated Master DAP Complaint, and the allegations with regard thereto, against the Defendants identified above (*check all that are adopted*).

| Check all that apply | Count | Cause of Action | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|---|
| ☐ | I | Horizontal Agreements in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | II | Hub-And-Spoke Agreement in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | III | Principal-Agent Combinations in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | IV | Agreements to Unreasonably Restrain Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | V | Anticompetitive Information Exchange (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☐ | VI | Violation of State and D.C. Antitrust Statutes | |
| ☐ | VII | Violation of State Consumer Protection Laws | |
| ☐ | VII | Unjust Enrichment | |

## **NOTE**

If Plaintiff wants to allege additional Causes of Action other than those selected in the preceding paragraph, which are the Causes of Action set forth in the Master Complaint, the facts supporting those additional Causes of Action, must be pled in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

## VII.    ADDITIONAL CAUSES OF ACTION

15. Plaintiff asserts the following additional Causes of Action and supporting allegations against the following Defendants:

**See attached paragraphs of supporting allegations.**

_____
_____
_____
_____

## VIII.   PRAYER FOR RELIEF

16. *Check all that apply*:

X          **WHEREFORE,** Plaintiff prays for all available compensatory damages, treble damages, punitive damages in amounts to be proven at trial, and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled, including disgorgement.

X          **WHEREFORE,** Plaintiff prays for declaratory and injunctive relief and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

[*Check the applicable box*]:

X          Plaintiff hereby demands a trial by jury as to all claims in this action.

☐          Plaintiff **does not demand** a trial by jury as to all claims in this action.

****

By signature below, Plaintiff's counsel hereby confirms their submission to the authority and jurisdiction of the United States District Court of the Northern District of Illinois and oversight of counsel's duties under Federal Rule of Civil Procedure 11, including enforcement as necessary through sanctions and/or revocation of *pro hac vice* status.

6

Dated: June 2, 2026

*/s/ Stephen M. Medlock*

Stephen M. Medlock
Stephen Cohen (*pro hac vice* forthcoming)
Rami Abdallah E. Rashmawi (*pro hac vice* forthcoming)
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
Tel: (202) 639-6500
Fax: (202) 639-6604
smedlock@velaw.com
scohen@velaw.com
rrashmawi@velaw.com

Michael Scarborough (*pro hac vice* forthcoming)
Dylan Ballard (*pro hac vice* forthcoming)
Madison Lo (*pro hac vice* forthcoming)
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com
mlo@velaw.com

Mackenzie Newman (*pro hac vice* forthcoming)
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
mnewman@velaw.com

*and*

*/s/ Ryan T. Holt*

Ryan T. Holt
Eric G. Osborne (*pro hac vice* forthcoming)
Lauren Z. Curry (*pro hac vice* forthcoming)
David H. Suggs (*pro hac vice* forthcoming)
Micah N. Bradley (*pro hac vice* forthcoming)
**SHERRARD ROE VOIGT
& HARBISON, PLC**

7

1600 West End Ave., Suite 1750
Nashville, Tennessee 37203
Tel: (615) 742-4200
Fax: (615) 742-4539
rholt@srvhlaw.com
eosborne@srvhlaw.com
lcurry@srvhlaw.com
dsuggs@srvhlaw.com
mbradley@srvhlaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on June 2, 2026, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

/s/ Stephen M. Medlock
Stephen M. Medlock

**ADDITIONAL FACTUAL ALLEGATIONS**

1.      Plaintiff Lifepoint Corporate Services, General Partnership ("Plaintiff"), is a Delaware general partnership with its principal place of business at 330 Seven Springs Way, Brentwood, Tennessee 37027.  Plaintiff is affiliated with Lifepoint Health, Inc. ("Lifepoint") and is the assignee of all claims in this action owned by Lifepoint and its affiliates.  Plaintiff is asserting the claims of Lifepoint and its affiliates in this action.

2.      Lifepoint is one of the largest hospital systems in the United States.  As of 2026, Lifepoint operates 135 hospitals nationwide, making it the fourth largest hospital system in the country by number of hospitals. Lifepoint is a portfolio company owned by a fund managed by Apollo Global Management ("Apollo"). An Apollo-managed fund first acquired Lifepoint in 2018, then transferred ownership to another Apollo-managed fund in or around 2021. Lifepoint employs nearly 55,000 healthcare workers and serves patients across 33 states. Defendants' anticompetitive scheme to suppress out-of-network ("OON") reimbursement rates has caused, and continues to cause, substantial financial harm to Lifepoint and the communities it serves.



3.      Lifepoint offers a full continuum of medically necessary healthcare services. They include general surgery, internal medicine, obstetrics, emergency room care, radiology, oncology,

diagnostic care, cardiac care, rehabilitation services, pediatric services, behavioral health services, and psychiatric care. At certain facilities, Lifepoint also provides specialized services such as open-heart surgery and neurosurgery. Because Lifepoint is the sole community healthcare provider in the majority of the non-urban communities it serves, any suppression of OON reimbursement rates directly threatens access to essential medical care for some of the nation's most vulnerable patient populations.

4. Lifepoint routinely provides services to commercially insured patients on an OON basis and submits bills for those services to the third-party payors. The payors that paid the substantial majority of Lifepoint's OON claims used MultiPlan's OON Repricing Services.

5. Lifepoint (and Plaintiff, as its assignee) was and is harmed by the MultiPlan Cartel because it submitted claims for medically necessary OON services that were systematically repriced and underpaid by members of the MultiPlan Cartel.

6. Lifepoint's own claims data further demonstrates that the MultiPlan Cartel has harmed Lifepoint by causing OON underpayments and associated economic damages. From October 1, 2024 through September 30, 2025, Lifepoint was underpaid millions of dollars on the out-of-network claims that it submitted to known users of MultiPlan's OON repricing services.

7. Representative individual claims illustrate the pricing pattern the MultiPlan Cartel applied to Lifepoint's OON services. Lifepoint submitted a behavioral health claim with billed charges of $1,304; Data iSight set the price for that claim at $696. Lifepoint submitted another claim for rehabilitation evaluation with billed charges of $1,054.58; Data iSight set the price for that claim at $402.31. These claims are representative, not isolated outliers, of the pricing pattern MultiPlan and its co-conspirators applied to Lifepoint's OON claims throughout the relevant period. The magnitude of the resulting underpayment is staggering.

8.　　Lifepoint's damages — measured by the difference between the lawful, but-for OON reimbursement that Lifepoint would have received absent the MultiPlan Cartel and the artificially suppressed amounts that Lifepoint actually received — are at least in the tens of millions of dollars, with the precise amount to be established at trial. These damages are a direct, foreseeable, and intended consequence of the cartel conduct alleged in the Master Complaint.

9.　　The MultiPlan Cartel's suppression of OON reimbursement for community hospital services does not merely harm Lifepoint; it inflicts well-documented harm on patients and communities that depend on non-urban hospitals as their sole source of medical care. Because Lifepoint is the only provider of acute care hospital services in the majority of the communities it serves, systematic underpayment of Lifepoint's hospitals directly jeopardizes patient access to essential services that may have no local substitute. For example, the U.S. Government Accountability Office found in its December 2020 report that when rural hospitals close, residents must travel roughly 20 miles farther to access common healthcare services such as inpatient acute care. The American Hospital Association has reported that 136 rural hospitals closed between 2010 and 2021, driven in significant part by low reimbursement, and that these closures had an "outsized impact on the health and economic well-being of rural communities."

10.　　The systematic underpayment of Lifepoint's hospitals through MultiPlan's common pricing methodology causes cascading harm. Underpaid providers are forced to absorb the cartel-imposed shortfall and to curtail or eliminate medically necessary levels of care, or to exit entirely. The result is fewer beds, longer waitlists, narrower access to services, and ultimately more serious illness or death. Lifepoint's injury, accordingly, is not merely an injury to itself. It is a direct and proximate consequence of an anticompetitive scheme that undermines the supply of medically necessary care to patients.

11. In some cases, Lifepoint has in-network contracts with some of the third-party payment plans offered by Aetna, Cigna, and Kaiser. However, while Lifepoint is in-network with several health plans, it is not in-network with <u>all</u> of those payors' health plans. For example, Lifepoint may be in-network with most of a payor's PPO plans, but not certain large employer PPO plans or Affordable Care Act individual marketplace plans. Lifepoint is not asserting a cause of action or seeking any relief with respect to those in-network charges. Instead, Lifepoint is asserting causes of action only as to purely non-contract charges submitted to members of the MultiPlan Cartel that were repriced pursuant to the cartel agreement described in the Consolidated Master DAP Complaint.

12. Moreover, no mandatory arbitration clause applies to Lifepoint's claims.

13. For example, Lifepoint has an in-network agreement with Aetna. The agreement does not contain mandatory arbitration clauses that apply to this litigation. The agreement with Aetna states only that the parties must arbitrate disputes "hereunder" the in-network agreement. Because the in-network agreement applies only to in-network services, out-of-network claims are not encompassed by or subsumed under the in-network agreement.

14. As another example, Lifepoint has an in-network agreement with Cigna. The agreement does not contain mandatory arbitration clauses that apply to this litigation, either. The agreement with Cigna states only that the parties must arbitrate disputes "arising out of or relating to" the in-network agreement. Because the in-network agreement applies only to in-network services, out-of-network claims do not arise under or depend on the in-network agreement.

15. As a further example, Lifepoint has an in-network agreement with Kaiser. The agreement does not contain mandatory arbitration clauses that apply to this litigation. The agreement with Kaiser states only that the parties must arbitrate disputes "arising out of" the in-

network agreement through an informal dispute resolution process. Because the in-network agreement applies only to in-network services, out-of-network claims do not arise under or depend on the in-network agreement.

16. Except for Aetna, Cigna, and Kaiser, Lifepoint has not entered into in-network agreements containing any alternative dispute resolution provisions with other Defendants.

17. ***Health Net of California***. Defendant Health Net of California, Inc. ("Health Net") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 21281 Burbank Blvd., Woodland Hills, CA 91367.

18. Health Net is a wholly owned subsidiary of Health Net, LLC, which is, in turn, a wholly owned subsidiary of Centene Corporation, a named defendant in the Consolidated Master DAP Complaint.

19. Health Net has executed an agreement with MultiPlan to utilize MultiPlan's Data iSight algorithm to set prices for out-of-network services, abdicating out-of-network pricing authority to MultiPlan. In addition, Health Net performed acts in furtherance of the MultiPlan Cartel. For example, Health Net executives began attending the MultiPlan Client Advisory Board Meetings—where the "rim" of the MultiPlan Cartel met and communicated *collective* changes that MultiPlan had made or was planning to make to the pricing methodology—in 2019. Michelle Puente, the Senior Director of Provider Network Management, and Derek Smith, a long-time manager, attended the 2019 MultiPlan Client Advisory Board Meeting on Health Net's behalf.

20. Health Net also reprices a substantial number of claims through MultiPlan's Data iSight algorithm. In the first quarter of 2025 alone, Health Net of California processed $44.6 million in changes through Data iSight, generating $36.3 million in underpayments.

14

21.     **Grand Jury Investigation.** The Antitrust Division of the U.S. Department of Justice is investigating the MultiPlan Cartel. In an SEC filing on May 18, 2026, MultiPlan acknowledged for the first time that it received a grand jury subpoena in August 2024 and that it has been cooperating with that investigation for the last 21 months. Public reporting suggests that this criminal antitrust investigation centers on how MultiPlan's Data iSight pricing methodology violates Section 1 of the Sherman Act.